James Hawkins (SBN 192925)
Gregory Mauro (SBN 222239)
Michael Calvo (SBN 314986)
JAMES HAWKINS, APLC
9880 Research Drive, Suite 200
Irvine, California 92618
Tel: 949-387-7200
james@jameshawkinsaplc.com
greg@jameshawkinsaplc.com
michael@jameshawkinsaplc.com

*Attorneys for Plaintiff
and the Putative Classes*

*Additional Plaintiff Appearances
to Follow*

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF CALIFORNIA
### FRESNO DIVISION

| | |
|---|---|
| **MARK GRAHAM** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**THE HERTZ CORPORATION**, as<br><br>Defendant. | Case No:<br><br>**CLASS ACTION/REPRESENTATIVE COMPLAINT FOR:**<br><br>1) **FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF THE FAIR LABOR STANDARDS ACT, §§ 29 U.S.C. 201, et seq.;**<br>2) **FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF CAL. LAB. CODE §§ 510, et seq.;**<br>3) **FAILURE TO PROVIDE REQUIRED MEAL AND REST PERIODS IN VIOLATION OF CAL. LAB. CODE §§ 226.7 & 512 AND THE APPLICABLE WAGE ORDER;**<br>4) **FAILURE TO PROVIDE ACCURATE ITEMIZED STATEMENTS IN VIOLATION OF CAL. LAB. CODE § 226;**<br>5) **FAILURE TO PROVIDE WAGES WHEN DUE IN VIOLATION OF CAL. LAB. CODE §§ 201, 202 AND 203;**<br>6) **FAILURE TO REIMBURSE NECESSARY EXPENDITURES IN VIOLATION OF CAL. LAB. CODE § 2802**<br>7) **VIOLATION OF THE BUSINESS AND PROFESSIONS CODE. §** |

**17200, et seq.;**

**JURY TRIAL DEMANDED**

*Additional Counsel for Plaintiff:*

Kevin J. Stoops (*Pro Hac Vice forthcoming*)
kstoops@sommerspc.com
Charles R. Ash, IV (*Pro Hac Vice* forthcoming)
crash@sommerspc.com
**SOMMERS SCHWARTZ, PC**
One Town Square, Suite 1700
Southfield, MI 48076
Telephone:   248-784-6613
Facsimile:    248-936-2143

Trenton R. Kashima (SBN 291405)
tkashima@sommerspc.com
**SOMMERS SCHWARTZ, P.C.**
402 West Broadway, Suite 1760
San Diego, CA 92101
Telephone: (619) 762-2125

*Trial Counsel for Plaintiff, Proposed Class, and Collective Members*

Plaintiff, MARK GRAHAM (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, hereby brings this Collective/Class Action Complaint against Defendant THE HERTZ CORPORATION (hereinafter "Defendant") and states as follows:

## INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA," or 29 U.S.C. § 201 *et seq.*); California Labor Code ("Labor Code") §§ 201, 202, 203, 226, 226.7, 510, 512, 1174, 1194, 1198, 2802; and California Industrial Welfare Commission Wage Order No. 4; California Business & Professions Code § 17200, *et seq.*

2.      Plaintiff was employed by Defendant as a Damage Appraiser.  In that role,

Plaintiff was tasked with appraising damage on Defendant's rental vehicles and for contacting body shops and parts vendors to perform any necessary repairs.

3. As alleged herein, Defendant unlawfully classified Damage Appraisers, such as Plaintiff, as exempt from the overtime provisions of the FLSA and from the protections of the Labor Code. Defendant deemed by its classification of Plaintiffs and other Damage Appraisers as "exempt" that all such employees were not entitled to receive a premium for any overtime hours worked, nor were they entitled to meal and rest breaks, as provided by the Labor Code.  Furthermore, Defendant failed to provide wage statements that met the statutory requirements of the Labor Code and failed to pay all wages in a timely manner.

4. Plaintiff, like his fellow Damage Appraisers in Defendant's rental car locations across the country, in the past and to this day, were systematically denied any overtime pay for hours worked in excess of forty (40) hour in a week or (for the California Damage Appraisers) for hours in excess of eight (8) in a single day.

5. Accordingly, because Defendant classified all Damage Appraisers as exempt employees, Plaintiff brings this action on behalf of himself and all similarly situated employees defined as: "All individuals who are or previously were employed by Defendant as a Damage Appraiser and classified as exempt at any time during the period beginning on the date four (4) years before the filing of this Complaint and ending on a date determined by the Court."

6. Plaintiff seeks a declaration that his rights, and the rights of all other Damages Appraisers, were violated, an award of unpaid wages, an award of liquidated damages, statutory penalties, injunctive and declaratory relief, attendant penalties, and an award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1367.

8.     This Court also has original jurisdiction over this action under the Class Action Fairness Act 28 U.S.C. § 1332(d). This is a class action in which: (1) there are 100 or more members in the proposed class; (2) at least some members of the proposed classes have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

9.     This Court has jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because the state law claim and the federal claim are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

10.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

11.     Venue is proper in the Eastern District of California because a substantial portion of the events forming the basis of this suit occurred in the Eastern District of California, specifically, in Fresno, California.

## **PARTIES**

12.     Plaintiff Mark Graham was employed by Defendant as a Damage Appraiser in Fresno, California from March 2015 through approximately June 2019. In that position, Defendant compensated him on a salary basis. His most recent salary was $50,080.00. He typically worked approximately 40 or more hours per week (and more than 8 hours per day). He has filed a consent to join form, attached hereto as ***Exhibit A***.

13.     Additional individuals who were or are employed by Defendant as Damage Appraisers during the past four years will also file their consent forms in this case.

14.     Defendant, The Hertz Corporation, is a Delaware Corporation registered to do business in California (Secretary of State File No. C0525490) with its address

COLLECTIVE/CLASS ACTION COMPLAINT

listed as 8501 Williams Road, Estero, Florida 33928.  Its registered agent for service in California is C T Corporation System (C0168406).

15.     Defendant is a for-profit corporation, which owns and operates Hertz rental car facilities and locations across the United States at airports (including the Fresno airport where Plaintiff was employed) and other non-airport locations.

16.     Defendant, The Hertz Corporation, "is a subsidiary of Hertz Global Holdings, Inc. and operates the Hertz, Dollar and Thrifty vehicle rental brands in approximately 10,200 corporate and franchisee locations throughout North America, Europe, The Caribbean, Latin America, Africa, the Middle East, Asia, Australia and New Zealand.  The Hertz Corporation is one of the largest worldwide rental companies, and the Hertz brand is one of the most recognized in the world." *See*, http://ir.hertz.com/company-overview (last visited on 2/20/2020).

17.     Additionally, "The Hertz Corporation owns the vehicle leasing and fleet management leader Donlen, operates the Firefly vehicle rental brand and Hertz 24/7 car sharing business in international markets and sells vehicles through Hertz Car Sales." *See*, http://ir.hertz.com/company-overview (last visited on 2/20/2020).

## GENERAL ALLEGATIONS

18.     Defendant describes itself as "one of the top car rental/leasing providers in the world."  *See*, https://hertz.jobs/ (last visited on 2/17/2020).  Indeed, Defendant is one of the nation's largest car rental corporations with "thousands of locations … including   3,000   neighborhood   locations   in   the   U.S."   *See*, https://www.hertz.com/rentacar/reservation/ (last visited on 2/17/2020).

19.     Upon information and belief, Defendant has employed hundreds, if not thousands, of Damage Appraisers in the United States over the past four years.

20.     Damage Appraisers, such as Plaintiff, document and report damage on Defendant's vehicles, then contact body shops and parts vendors to perform the necessary repairs.

21.     Plaintiff and all other Damage Appraisers are trained and provided with detailed instructions from Defendant on how to document and report damages identified on a rental vehicle.  Damage Appraisers are *not* permitted to deviate from Defendant's detailed procedures and policies in conducting their damage appraisals.

22.     Plaintiff and all other Damages Appraisers are also instructed by Defendant on which vehicles to inspect and appraise, as well as what body shops and parts vendors to subsequently contact to perform the repairs.  Plaintiff and all other Damage Appraisers had no independent decision making authority in this regard and were not permitted to independently deviate from the instructions provided by Defendant.

23.     Plaintiff and all other Damages Appraisers did not manage other employees; nor did they have any authority to discipline, hire, or fire other employees.

24.     As evidence by the uniformity of the job postings on Defendant's website, the responsibilities and requirements of Damage Appraisers were the same from location to location.  *See*, ***Exhibit B***.

25.     No four-year college education is required to be a Damage Appraiser for Defendant.  *See*, ***Exhibit B***.

26.     During the course of a work day, the Damage Appraisers' supervisors identify any vehicle that needs a damage appraisal.  On average, Plaintiff estimates he performed damage appraisals on eight (8) to ten (10) vehicles per day.  However, during the peak seasons he averaged ten (10) to fifteen (15) vehicles per day.

27.     A Damage Appraiser, such as Plaintiff, begins an appraisal with a visual inspection of the vehicle, taking notes of where the vehicle is damaged, and identifying any parts that may need to be replaced.  Next, the Damage Appraiser photographs any areas of damage for Defendant's records.  The information collected is then inputted into Defendant's computer systems in order for a work order estimate to be generated.

28.     Once the information gathered during the initial assessments is entered into

the computer, Damage Appraisers must wait for approval from Defendant on the work order estimate that was generated by Defendant's computer systems. Once Defendant approves the work order estimate, a purchase order for parts is generated.

29.     After Defendant approves the purchase order, the Damage Appraisers contact the parts vendor and body shop, both of which are selected by Defendant's District Manager, and the vehicle repair process begins.

30.     Often times throughout the day, Damage Appraisers will receive phone calls on their cellphones from auto body shops and parts suppliers regarding vehicle repairs. Defendant did not provide any reimbursement to Damage Appraisers for the use of their cell phones, which amounted to a necessary business expense. As discussed below, Defendant's failure to reimburse Plaintiff and the other Damage Appraisers for this expense is a violation of the Labor Code.

31.     Despite Defendant's classification of its Damage Appraisers as exempt from the overtime protections of the FLSA and the Labor Code, the primary duties, responsibilities and actual circumstances of Damage Appraisers' work environment, as well as the character of their jobs as a whole, dictate that they were and/or are not exempt under the FLSA. The reality was and is that Plaintiffs and members of the putative Class/Collective were and/or are not exempt employees.

32.     Plaintiffs and all other Damage Appraisers did not perform job duties, which involve the exercise of discretion and/or independent judgment, nor did they enjoy the authority to make independent decisions on matters that affected the business as a whole or any significant part of the business. Their respective job duties did not include engaging in any type of analysis, nor the creation of any reports, but instead they simply followed and/or utilized automated and pre-established procedures, checklists or formats in performing all job duties, even including those which arguably did not involve menial tasks.

33.     As a result, Defendant has engaged in a systematic practice of using and

COLLECTIVE/CLASS ACTION COMPLAINT

forcing its salaried Damage Appraisers who do not receive overtime pay to work many hours in order to avoid having to pay its other hourly employees overtime wages.

34. Plaintiff herein alleges on behalf of himself and all other salaried Damage Appraisers that Defendant's failure to pay overtime and other compensation was and is a knowing and willful violation of the overtime wage requirements of the FLSA and the Labor Code. Accordingly, Plaintiff and the other salaried Damage Appraisers are entitled to recover all overtime pay due from overtime hours worked for which compensation was not paid, an equal sum for liquidated damages, prejudgment interest, attorneys' fees and costs under the FLSA's three (3) year statute of limitations.

**Meal and Rest Period Violations**

35. Under California law, employers *must* provide a meal period of at least 30 minutes for every five (5) hours worked. Cal. Lab. Code § 512(a) states:

> An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

36. Additionally, the applicable Industrial Welfare Commission Wage Order states that an employee is also entitled to a ten (10) minute break for each four (4) hour period, or major fraction thereof, worked.

37. However, Defendant failed to provide their Damage Appraisers with a 30-minute meal period for every five (5) hours worked, or a rest period for each four (4) hour period worked. To the extent the opportunity for a meal or rest break did present itself those breaks were either cut short or interrupted with work tasks.

38. Accordingly, Plaintiff and the class are entitled to one additional hour of compensation per workday for a missed meal and rest period.

**Defendant Unlawfully Benefitted From Uncompensated Overtime**

39. Plaintiff regularly worked in excess of eight (8) hours in a day and forty (40) hours in a week, but never received overtime premiums at one-and-one-half his regularly hourly rate, as was required by the FLSA and the Labor Code.

40. At all relevant times, Defendant directed and directly benefited from the uncompensated overtime work performed by Plaintiff and all similarly situated Damage Appraisals.

41. At all relevant times, Defendant controlled the work schedules, duties, protocols, assignments and employment conditions of Damage Appraisers.

42. At all relevant times, Defendant was able to track the amount of overtime their Damage Appraisers worked; however, Defendant failed to document, track, or pay its Damage Appraisers for overtime work they performed.

43. At all relevant times, Plaintiff and all other Damage Appraisers should have been classified as non-exempt employees, subject to the requirements of the FLSA and the California Labor Code.

44. At all relevant times, Defendant's policies and practices deprived Plaintiff and all other Damage Appraisers of overtime wages because Defendant's Damage Appraisers typically worked over forty (40) hours in a workweek, and more than eight (8) hours per day.

45. Defendant knew or should have known that Plaintiff and other Damage Appraisers should have been classified as non-exempt employees and should have been paid overtime premiums. Indeed, in light of the facts cited above regarding the Damage Appraisers' job duties, there is no conceivable way for Defendant to establish that it acted in good faith.

46. As an example of particular workweeks where Defendant failed to pay Plaintiff overtime for hours worked in excess of 40 hours (as mandated by the FLSA and California Labor Code) Plaintiff has attached several exemplary paystubs. *See*, ***Exhibit C***, Exemplary Paystubs. Each of the attached paystubs confirms Plaintiff was

paid on a salary, did not receive overtime, and was provided with paystubs that did not reflect the true number of hours worked.

## FLSA COLLECTIVE ACTION ALLEGATIONS

47.   Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on his own behalf and on behalf of:

> *All individuals who are or previously were employed by Defendant as a Damage Appraiser and were classified as exempt at any time during the period beginning on the date three (3) years before the filing of this Complaint and ending on a date determined by the Court*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

48.   Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated Damage Apraisers.

49.   Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

50.   Consistent with Defendant's policy and pattern or practice, Plaintiff and the members of the FLSA Collective were not paid premium overtime compensation for all hours they worked beyond 40 hours in a workweek.

51.   All of the work that Plaintiff and the FLSA Collective members performed was assigned by Defendant, and/or Defendant was aware of all of the work that Plaintiff and the FLSA Collective members performed.

52.   As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective members. This policy and pattern or practice includes, but is not limited to:

    a.   Willfully misclassifying its employees, including Plaintiff and the FLSA Collective, as exempt from the overtime protections of the FLSA;

b. Willfully failing to pay its employees, including Plaintiff and the FLSA Collective, for all overtime premium wages for all hours worked in excess of 40 hours per workweek; and

c. Willfully failing to accurately record all of the time that its employees, including Plaintiff and the FLSA Collective, worked for Defendant's benefit.

53.    Defendant is aware or should have been aware that federal law required it to pay Plaintiff and the FLSA Collective overtime premiums for all hours worked in excess of 40 per workweek.

54.    Defendant failed to properly maintain timekeeping and payroll records pertaining to the FLSA Collective under the FLSA, 29 U.S.C. 211(c).

55.    Defendant's unlawful conduct was widespread, repeated, and consistent.

56.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policies, or plans; and (d) their claims are based upon the same factual and legal theories.

57.    The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues do not vary substantially among the proposed FLSA Collective members.

58.    There are many similarly situated current and former Damage Appraisers who were underpaid in violation of the FLSA who would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join it.

59.    Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

COLLECTIVE/CLASS ACTION COMPLAINT

60.   Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

61.   Plaintiff estimates the proposed FLSA Collective, including both current and former employees over the relevant period will include several hundred, if not thousands, of workers. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## CALIFORNIA CLASS ACTION ALLEGATIONS

62.   Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on his own behalf and on behalf of all similarly situated current and former Damage Appraisers of Defendant who are or were employed at any time in the last four years.  Plaintiff proposes the following class definition:

> *All individuals who are or previously were employed by Defendant as a Damage Appraiser and were classified as exempt at any time during the period beginning on the date four (4) years before the filing of this Complaint and ending on a date determined by the Court*

(hereinafter referred to as the "California Class"). Plaintiff reserves the right to amend the putative class definition if necessary.

63.   Plaintiff shares the same interests as the putative class and will be entitled under the California Labor Code to unpaid overtime compensation, attorneys' fees, and costs and lost interest owed to them under nearly identical factual and legal standards as the remainder of the putative class.

64.   The putative California Class meets the numerosity requirement of Rule 23(a)(1) because, during the relevant period, Defendant employed hundreds of Damage Appraisers in California.  The California Class members are so numerous that joinder of all such persons is impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. The precise number of California Class members should be readily available from a review of Defendant's personnel, scheduling, time, phone, online social media, and payroll records, and from input received from the putative California Class members.

65.     The putative California Class meets the commonality requirement of Rule 23(a)(2) because, during the relevant period, Defendant engaged in a common course of conduct that violated the legal rights of Plaintiff and the California Class.  Individual questions that Plaintiff's claims present, to the extent any exist, will be far less central to this litigation than the numerous material questions of law and fact common to the California Class, including but not limited to:

a.  Whether Defendant misclassified Plaintiff and the California Class as exempt from the Labor Code;

b.  Whether Defendant engaged in a policy or practice of failing to pay each California Class member overtime compensation for each overtime hour worked;

c.  Whether Defendant failed to provide each California Class member with at least one 30-minute meal period on every workday of at least 5 hours and a second 30-minute meal period on every workday of at least 10 hours as required by the California Employment Law and Regulations;

d.  Whether Defendant violated sections 201 to 203 of the Labor Code by willfully failing to pay all wages and compensation due each Class member who quit or who was discharged;

e.  Whether Defendant violated section 226 of the Labor Code by willfully failing to provide accurate itemized wage statements showing, *inter alia*, the number of hours worked by each California Class member and the corresponding hourly rate;

f.  Whether Defendant violated sections 1174 and 1175 of the Labor Code and the applicable Industrial Welfare Commission Orders by failing to maintain records pertaining to when California Class members began and ended each work period, the total daily hours worked, and the total hours worked per pay period;

g.  Whether Defendant engaged in unfair business practices in violation of Business and Professions Code section 17200, *et seq.*; and

h.  Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating California state law.

66.     The status of all individuals similarly situated to Plaintiff raises an identical legal question: whether Defendant's Damage Appraisers are misclassified and are entitled to back wages, including overtime.

67.    The putative California Class meets the typicality requirement of Rule 23(a)(3) because Plaintiff and the putative California Class members were all employed by Defendant as Damage Appraisers and performed their job duties without receiving all wages, including overtime wages, owed for that work.

68.    The California Class meets the adequacy requirement of Rule 23(a)(4) because there is no apparent conflict of interest between Plaintiff and the putative California Class members, and because Plaintiff's attorneys have successfully prosecuted many complex class actions, including wage and hour class and collective actions, and will adequately represent the interests of Plaintiff and the putative Class members.

69.    The putative California Class meets the predominance requirement of Rule 23(b)(3), because issues common to the California Class predominate over any questions affecting only individual members, including but not limited to, those listed above.

70.    The California Class meets the superiority requirement of Rule 23(b)(3) because allowing the parties to resolve this controversy through a class action would permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.

71.    Given the material similarity of the California Class members' claims, even if each California Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds or even thousands of identical actions.   Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources.   Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative California Class's claims, create significant economies of scale for the Court and the parties and result in a binding,

uniform adjudication on all issues.

**COUNT I**
**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.**
**FAILURE TO PAY OVERTIME WAGES**
**(On Behalf of the FLSA Collective)**

72.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

73.   At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

74.   At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

75.   Plaintiff and the FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

76.   At all times, Defendant classified Plaintiff and the FLSA Collective members as exempt employees, even though it knew or should have known Plaintiff and the FLSA Collective were truly a non-exempt employees.

77.   Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

78.   At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

79.   At all times relevant to this action, Defendant required Plaintiff and the FLSA Collective members to work over forty (40) hours in a single workweek, but failed to pay these employees the federally mandated overtime compensation for this work.

80.   The off-the-clock work performed every shift by Plaintiff and the FLSA Collective members is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

81.   In workweeks where Plaintiff and other FLSA Collective members worked 40 hours or more their overtime wages should have been paid at the federally mandated

rate of 1.5 times each employee's regularly hourly wage.  29 U.S.C. § 207.

82.    Defendant's violations of the FLSA were knowing and willful. Defendant knew or easily could have determined whether Plaintiff and the FLSA Collective were entitled to overtime premiums. Further, Defendant could have easily accounted for and properly compensated Plaintiff and the FLSA Collective for these work activities, but did not

83.    As non-exempt employees, Defendant's Damage Appraisers were entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

84.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, each employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 510, 1194, 1198**
**AND WAGE ORDER 4 – FAILURE TO PAY OVERTIME**
**(On Behalf of the California Class)**

85.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

86.    At all relevant times, Plaintiff and the California Class regularly performed non-exempt work and were thus subject to the overtime requirements of California law.

87.    Labor Code §§ 510 and 1198 and Wage Order § 3(A) provide that: (a) employees are entitled to compensation at the rate of one and one-half times their regular rate of pay for all hours worked in excess of eight (8) hours in a workday up to twelve (12) hours in a workday, in excess of forty (40) hours in a workweek, and for the first eight (8) hours of work on the seventh (7th) consecutive day or a workweek; and (b) employees are entitled to compensation at the rate of twice their regular rate of pay for all hours worked in excess of twelve (12) hours in a workday, and in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

88.    At all relevant times, Plaintiff and the California Class regularly worked in excess of eight (8) hours in a workday and/or in excess of forty (40) hours in a workweek.

89.    At all relevant times, Defendant failed and refused to pay Plaintiff and the California Class members for overtime premiums.

90.    Defendant intentionally, maliciously, fraudulently and with the intent to deprive the California Class of their ability to earn a living so as to reduce their labor costs, knowingly and willingly implemented a scheme or artifice to avoid paying overtime by reducing the rate of pay to Plaintiff and other California Class members who worked overtime hours.

91.    Plaintiff and the California Class were entitled to receive overtime compensation at their lawful regular rate of pay, including the shift differential where applicable. Defendant's failure to pay lawful premium overtime wages, as alleged above, was a willful violation of Labor Code §§ 510, 1198, and Wage Order.

92.    Wherefore, Plaintiff demands payment of the unpaid balance of the full amount of wages due for unpaid time worked, as well as overtime premiums owing, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194 and 1194.2 as a result of Defendant's failure to pay for all time worked and such premium compensation, as is required under California law.

**COUNT III**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 226.7 and 512**
**FAILURE TO PROVIDE MEAL AND REST BREAKS**
**(On Behalf of the California Class)**

93.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

94.    Labor Code § 512, and Wage Order § 11(A) and (B) provide that an employer may not employ a person for a work period of more than five (5) hours without providing the employee with a meal period of not less than thirty (30) minutes, and may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than (30) minutes.

COLLECTIVE/CLASS ACTION COMPLAINT

95.     Additionally, Defendant is required to provide a rest period of ten (10) minutes for each four (4) hour period, or major fraction thereof, worked.

96.     At all relevant times, Plaintiff and the California Class consistently worked in excess of five (5) or ten (10) hours in a day.

97.     At all relevant times, Defendant regularly required employees to perform work during their first and/or second meal periods, without proper compensation. Further, Defendant did not provide rest breaks as is required by California law. Defendant's practice of requiring employees to perform work during their legally mandated meal and rest periods without premium compensation is a violation of Labor Code §§ 226.7 and 512, and IWC Wage Order No. 7.

98.     Defendant purposefully elected not to provide meal and rest periods to Plaintiff and California Class members, and Defendant acted willfully, oppressively, and in conscious disregard of the rights of Plaintiff and the California Class members in failing to do so.

99.     Plaintiff is informed and believes Defendant did not properly maintain records pertaining to when Plaintiff and the California Class members began and ended each meal period, in violation of Labor Code §1174 and Wage Order § 7(A).

100.    As a result of Defendant's knowing, willful, and intentional failure to provide meal and rest breaks, Plaintiff and the California Class members are entitled to recover one (1) additional hour of pay at the employee's regular rate of pay for each work day that a meal and/or rest period was not provided, pursuant to Labor Code § 226.7 and Wage Order § 11(D), and penalties, reasonable attorneys' fees, and costs pursuant to Labor Code §§ 218.5.

101.    Defendant's wrongful and illegal conduct in failing to provide California Class members with meal or rest breaks or to provide premium compensation, unless and until enjoined by order of this Court, will continue to cause great and irreparable injury to Plaintiff and the California Class members in that Defendant will continue to

violate these laws unless specifically ordered to comply with the same. The expectation of future violations will require current and future employees to repeatedly and continuously seek legal redress in order to gain compensation to which they are already entitled. Plaintiff and the California Class members have no other adequate remedy at law to insure future compliance with the laws alleged herein to have been violated.

102.   Wherefore, Plaintiff demands, pursuant to Labor Code Section 227.7(b), that Defendant pay each California Class member one additional hour of pay at the California Class member's regular rate of compensation for each work day that the meal and/or rest period was not provided.

**COUNT IV**
**VIOLATION OF CALIFORNIA LABOR CODE § 226 and 1174**
**FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS**
**(On Behalf of the California Class)**

103.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

104.   Labor Code §§ 226 and 1174 provide that every employer shall, semi-monthly or at the time of payment of wages, furnish each employee, either as a detachable part of the check or separately, an accurate, itemized statement in writing showing the total hours worked, and the applicable hourly rates and corresponding total number of hours worked.

105.   At all relevant times, Defendant failed to maintain proper records and furnish Plaintiff and the California Class members, either semi-monthly or at the time of each payment of wages, an accurate, itemized statement conforming to the requirements of Labor Code §§ 226 and 1174.

106.   At all relevant times, Defendant failed to furnish Plaintiff and the Class members with accurate wage statements in writing, showing: (1) gross wages earned; (2) total hours worked by each respective employee; (3) all deductions; (4) net wages earned; (5) the inclusive dates of the period for which the employee is paid; (6) the name of the employee and only the last four digits of his or her social security number or an

employee identification number; (7) the name and address of the legal entity that is the employer; and (8) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate.

107.    Plaintiff is informed and believes that Defendant knew or should have known that Plaintiff and the California Class members were entitled to receive wage statements compliant with Labor Code § 226 and 1174, and that Defendant willfully and intentionally failed to provide Plaintiff and the California Class members with such accurate, itemized statements showing, for example, accurate hours and overtime calculations.

108.    Wherefore Plaintiff demands that Defendant pay each and every California Class member fifty dollars ($50.00) for the initial pay period in which the violation occurred and one hundred dollars ($100) for each subsequent violation, up to a maximum of four thousand dollars ($4,000.00) pursuant to Labor Code § 226, as well as reasonable attorneys' fees and costs.

## COUNT V
## VIOLATION OF CALIFORNIA LABOR CODE §§ 201, 202, 203
## FAILURE TO PAY WAGES WHEN DUE
### (On behalf of the California Class)

109.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

110.    Cal. Lab. Code § 200 provides that:

As used in this article:(a) "Wages" includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, Commission basis, or other method of calculation. (b) "Labor" includes labor, work, or service whether rendered or performed under contract, subcontract, partnership, station plan, or other agreement if the labor to be paid for is performed personally by the person demanding payment.

111.    Cal. Lab. Code § 201 provides, in relevant part, that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable."

112.    Cal. Lab. Code § 202 provides, in relevant part, that:

If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting. Notwithstanding any other provision of law, an employee who quits without providing a 72-hour notice shall be entitled to receive payment by mail if he or she so requests and designates a mailing address. The date of the mailing shall constitute the date of payment for purposes of the requirement to provide payment within 72 hours of the notice of quitting immediately."

113.   There was no definite term in Plaintiff's or any of the other Damage Appraisers' employment contract.

114.   The employment of Plaintiff and many other Damage Appraisers was terminated and Defendant did not tender payment of earned and outstanding overtime wages to these employees who actually worked overtime, as required by law.

115.   Therefore, as provided by Cal Lab. Code § 203, on behalf of himself and the putative California Class whose employment has ended, Plaintiff demands up to thirty (30) days of pay as penalty for not paying all wages due at time of termination for all employees whose employment terminated during the class period, and demands an accounting and payment of all wages due, plus interest and statutory costs as allowed by law.

## COUNT VI
## VIOLATION OF CALIFORNIA LABOR CODE § 2802
## FAILURE TO REIMBURSE NECESSARY BUSINESS EXPENSES
### (On Behalf of the California Class)

116.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

117.   Under Labor Code § 2802(a) an employer must indemnify its employees for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer.

118.   Damage Appraisers, such as Plaintiff, incurred necessary expenditures in the performance of their job duties for Defendants, namely, the cost of cellphones, which Damage Adjusters were often required to use in carrying out their job duties.  For example, when autobody shops and parts suppliers would contact Plaintiff and other

Damage Appraisers on their cell phones. From four (4) years prior to the original filing of this lawsuit and continuing to the present, Defendants consistently failed to reimburse Employees for these necessarily incurred business expenses.

119.   As a result of the unlawful acts of Defendant, Plaintiff and the California Class have been deprived of reimbursement in amounts to be determined at trial; they are entitled to recovery of such amounts, plus interest and penalties thereon, attorneys' fees, and costs.

**COUNT VII**
**VIOLATION OF BUSINESS AND PROFESSIONS CODE, § 17200, *et seq.***
**(On Behalf of the California Class)**

120.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

121.   Defendant engaged and continues to engage in unfair business practices in California by practicing, employing and utilizing the unlawful practices described above, including: (a) requiring Damage Appraisers to work overtime without lawful premium compensation; (b) failing to provide lawful meal and rest breaks or premium compensation in lieu thereof; and (c) failing to provide accurate, itemized wage statements.

122.   In addition, the conduct alleged in each of the previously stated causes of action constitute an unlawful and for unfair business practice within the meaning of Business & Professions Code § 17200, *et seq.*

123.   As a result of Defendant's conduct, Plaintiff and the California Class have been harmed as described in the allegations set forth above.

124.   The actions described above, constitute false, unfair, fraudulent and deceptive business practices within the meaning of California Business & Professions Code § 17200, *el seq.* By and through such unfair, unlawful and/or fraudulent business practices, Defendant obtained valuable property, money and services from Plaintiff and the California Class, and have deprived Plaintiff and the California Class fundamental rights and privileges guaranteed to all employees under California law.

125.  Defendant was unjustly enriched by the policies and practices described herein, and those policies and practices conferred an unfair business advantage on Defendant over other businesses providing similar services which routinely comply with the requirements of California law.

126.  Plaintiff seeks, on his own behalf, and on behalf of the putative California Class members, full restitution of all monies withheld, acquired and/or converted by Defendant by means of the unfair practices complained of herein, as necessary and according to proof, and/or disgorgement of all profits acquired by Defendant by means of the acts and practices described herein.

127.  Plaintiff seeks, on his own behalf, and on behalf of all other California Class members similarly situated, an injunction to prohibit Defendant from continuing to engage in the unfair business practices complained of herein. Defendant's unlawful conduct, as described above, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiff and all California Class members in that Defendant will continue to violate these California laws unless specifically ordered to comply with the same. This expectation of future violations will require current and future employees to repeatedly and continuously seek legal redress in order to gain compensation to which they are entitled under California law. Plaintiff and the Class have no other adequate remedy at law to insure future compliance with the California labor laws and wage orders alleged to have been violated herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on his own behalf and on the behalf of the putative Collective and California Class members, requests judgment as follows:

a.  Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b.  Designating the named Plaintiff as Representative of the proposed FLSA collective;

c.  Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all those individuals who are similarly situated, and permitting Plaintiff to send

notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential class members of their rights under the FLSA;

d.   Certifying the proposed California Class;

e.   Designating Plaintiff as representative of the proposed California Class;

f.   Appointing Plaintiff's counsel as Class Counsel;

g.   Declaring that Defendant willfully violated the Fair Labor Standards Act and its attendant regulations as set forth above;

h.   Granting judgment in favor of Plaintiff and against Defendant and awarding the amount of unpaid overtime wages calculated at the rate of one and one-half (1.5) of Plaintiff's regular rate multiplied by the number of hours that Plaintiff worked in excess of eight (8) hours per day and/or forty (40) hours per week for the past four years;

i.   Awarding liquidated damages in an amount equal to the amount of unpaid overtime wages found due and owing;

j.   For disgorgement and restitution to Plaintiff and other similarly effected Class members of all funds unlawfully acquired by Defendant, and withheld from Plaintiff and the California Class, by means of any acts or practices declared by this Court to violate the mandate established by California Business and Professions Code § 17200, et seq.;

k.   Declaring Defendant willfully violated the Labor Code by failing to reimburse Plaintiff and the California Class for necessary business expenses, as required by Labor Code § 2802;

l.   For an injunction prohibiting Defendant from engaging in the unfair business practices complained of herein;

m.   For an injunction requiring Defendant to give notice to persons to whom restitution is owing and the means by which to file for restitution;

n.   For an order requiring Defendant to show cause, if any there be, why they should not be enjoined and ordered to comply with the applicable California Industrial Welfare Commission wage orders related to record keeping for Defendant's employees related to same; and for an order enjoining and restraining Defendant and its Damage Appraisers, servants and employees related thereto;

o.   For actual damages or statutory penalties according to proof as set forth in California Labor Code §§ 226, 1174, and Wage Order § 7(A) related to record keeping;

For statutory and civil penalties pursuant to Labor Code §§ 225.5, 226(e), 226.3, and 226.7;

p.   For pre-judgment interest as allowed by California Labor Code §§ 218.6, 1194 and California Civil Code § 3287 and other statutes;

q.   For reasonable attorneys' fees, expenses, and costs as provided by the FLSA, California Labor Code §§ 218.5, 226(e) and (g), 1194, and California Code of Civil Procedure § 1021.5; and

r.   For such other and further relief the Court may deem just and proper.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through his attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Respectfully Submitted,

Dated: March 4, 2020

By:   /s/ Gregory Mauro

James Hawkins (SBN 192925)
Gregory Mauro (SBN 222239)
Michael Calvo (SBN 314986)
JAMES HAWKINS, APLC
9880 Research Drive, Suite 200
Irvine, California 92618
Tel: 949-387-7200
james@jameshawkinsaplc.com
greg@jameshawkingsaplc.com
michael@jameshawkinsaplc.com

Kevin J. Stoops (*pro hac vice* forthcoming)
kstoops@sommerspc.com
Charles R. Ash, IV (*pro hac vice* forthcoming)
crash@sommerspc.com
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: (248) 355-0300
Facsimile: (248) 436-8453

Trenton R. Kashima (SBN 291405)
SOMMERS SCHWARTZ, P.C.
402 West Broadway, Suite 1760
San Diego, CA 92101
Telephone: (619) 762-2125
Facsimile: (619) 762-2127

- 24 -
COLLECTIVE/CLASS ACTION COMPLAINT

1

2

*Trial Counsel for Plaintiff and Proposed Class*
*and Collective Members*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COLLECTIVE/CLASS ACTION COMPLAINT

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA
### FRESNO DIVISION

| | |
|---|---|
| **MARK GRAHAM** individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **THE HERTZ CORPORATION**, as <br><br>           Defendant. | Case No: |

## Consent to Join Form

I work or worked for The Hertz Corporation (hereinafter "Defendant") as a salaried Damage Appraiser and worked uncompensated overtime.

I choose to participate in the lawsuit titled *Graham v. The Hertz Corporation*, to recover unpaid overtime wages under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and other relief under state and federal law.

I choose to be represented in this action by the named plaintiff and Sommers Schwartz, P.C. and James Hawkins, APLC. (collectively, "Plaintiff's Counsel"). I agree to be bound by their decisions in the litigation and by any adjudication of this action by a court, whether it is favorable or unfavorable. I understand that reasonable costs expended by Plaintiff's Counsel on my behalf will be deducted from any settlement or judgment amount on a pro-rata basis among all other plaintiffs. I understand that Plaintiff's Counsel will petition the Court to award them attorneys' fees from any settlement or judgment.

Print Name:  *Mark Graham*

Signature:  *[signature]*

Date:  *2/25/20*

# EXHIBIT B

# Damage Appraiser
## South San Francisco, California

## Apply Now

**General Responsibilities**

At Hertz, you'll be recognized and rewarded for your hard work and abilities, and no two days are the same.

If you're looking for the benefits of joining an industry leader, with a high-charged, energy-filled environment where you learn something new every day, then look no further. Our Appraiser position has exactly what you're looking for. Bring your energy, drive and motivation to Hertz, and put your career in high gear!

**This position does have a company car provided**

**Mandatory Requirements**

Successful candidates will have 3-5 years of experience appraising vehicles. You will need strong customer service skills as you will be responsible for meeting and greeting the body shop owners working on our fleet as well as discovering new body shops to add to our vendor list.

Excellent communication skills are needed as you will also be in contact with the body shops regarding the body damage, preparing administrative paperwork for the fleet, salvage packages, and will be responsible for quality control when work is being performed on the fleet.

The preferred candidate would be ASE certified for Body Damage estimating or ICAR certified. A working knowledge of the Mitchell 6.0 appraisal system is a plus!

Candidates who have experience working with insurance agencies appraising vehicles which have been involved in accidents and have damage which requires repair.

**EEO Statement**

Hertz is a Drug-Free Workplace. All employment is contingent on successful completion of drug and background screening.

Hertz is an equal opportunity affirmative action employer and administers all personnel practices without regard to race, color, religion, sex, age, national origin, sexual orientation, gender identity or expression, marital status or domestic partnership status, disability, protected veteran status or military status, genetic information, or any other category protected under applicable law. Hertz is committed to taking affirmative steps to promote the employment and advancement of minorities, women, persons with disabilities and protected veterans.

**Location** US-CA-South San Francisco

**Job ID** 186859

**# Positions**

**Category** RAC Operations

**Division** RAC

**Position Type** Regular Full Time

## Apply Now

# Damage Appraiser
## Windsor Locks, Connecticut

## Apply Now

**General Responsibilities**

At Hertz, you'll be recognized and rewarded for your hard work and abilities, and no two days are the same.

If you're looking for the benefits of joining an industry leader, with a high-charged, energy-filled environment where you learn something new every day, then look no further. Our Appraiser position has exactly what you're looking for. Bring your energy, drive and motivation to Hertz, and put your career in high gear!

**This position does have a company car provided**

**Mandatory Requirements**

Successful candidates will have 3-5 years of experience appraising vehicles. You will need strong customer service skills as you will be responsible for meeting and greeting the body shop owners working on our fleet as well as discovering new body shops to add to our vendor list.

Excellent communication skills are needed as you will also be in contact with the body shops regarding the body damage, preparing administrative paperwork for the fleet, salvage packages, and will be responsible for quality control when work is being performed on the fleet.

The preferred candidate would be ASE certified for Body Damage estimating or ICAR certified. A working knowledge of the Mitchell 6.0 appraisal system is a plus!

Candidates who have experience working with insurance agencies appraising vehicles which have been involved in accidents and have damage which requires repair.

**EEO Statement**

Hertz is a Drug-Free Workplace. All employment is contingent on successful completion of drug and background screening.

Hertz is an equal opportunity affirmative action employer and administers all personnel practices without regard to race, color, religion, sex, age, national origin, sexual orientation, gender identity or expression, marital status or domestic partnership status, disability, protected veteran status or military status, genetic information, or any other category protected under applicable law. Hertz is committed to taking affirmative steps to promote the employment and advancement of minorities, women, persons with disabilities and protected veterans.

**Location** US-CT-Windsor Locks

**Job ID** 187126

**# Positions**

**Category** RAC Operations

**Division** RAC

**Position Type** Regular Full Time

# Apply Now

# Damage Appraiser - Dulles Airport
## Leesburg, Virginia

## Apply Now

### General Responsibilities

At Hertz, you'll be recognized and rewarded for your hard work and abilities, and no two days are the same.

If you're looking for the benefits of joining an industry leader, with a high-charged, energy-filled environment where you learn something new every day, then look no further. Our Appraiser position has exactly what you're looking for. Bring your energy, drive and motivation to Hertz, and put your career in high gear!

### This position does have a company car provided

### Mandatory Requirements

Successful candidates will have 3-5 years of experience appraising vehicles. You will need strong customer service skills as you will be responsible for meeting and greeting the body shop owners working on our fleet as well as discovering new body shops to add to our vendor list.

Excellent communication skills are needed as you will also be in contact with the body shops regarding the body damage, preparing administrative paperwork for the fleet, salvage packages, and will be responsible for quality control when work is being performed on the fleet.

The preferred candidate would be ASE certified for Body Damage estimating or ICAR certified. A working knowledge of the Mitchell 6.0 appraisal system is a plus!

Candidates who have experience working with insurance agencies appraising vehicles which have been involved in accidents and have damage which requires repair.

### EEO Statement

Hertz is a Drug-Free Workplace. All employment is contingent on successful completion of drug and background screening.

Hertz is an equal opportunity affirmative action employer and administers all personnel practices without regard to race, color, religion, sex, age, national origin, sexual orientation, gender identity or expression, marital status or domestic partnership status, disability, protected veteran status or military status, genetic information, or any other category protected under applicable law. Hertz is committed to taking affirmative steps to promote the employment and advancement of minorities, women, persons with disabilities and protected veterans.

**Location** US-VA-Sterling | US-DC-Washington | US-VA-Sterling | US-VA-Leesburg | US-DC-Washington

**Job ID** 175389

**# Positions**

**Category** Maintenance - Vehicle

**Division** RAC

**Position Type** Regular Full Time

# Apply Now

# EXHIBIT C

| EMPLOYEE NAME | | | EMPLOYEE NUMBER | | CHECK SEQUENCE | | CHECK NUMBER |
|---|---|---|---|---|---|---|---|
| Mark J Graham | | | 216625 | | 01260 | | 0009057049 |
| PERIOD START | PERIOD END | | PAYMENT DATE | | ORGANIZATION | | |
| 10-JUN-2019 | 23-JUN-2019 | | 14-JUN-2019 | | RAC.WEST.N PAC.Fresno. | | |
| FEDERAL FILING INFORMATION | | STATE FILING INFORMATION | | | PAYROLL | | |
| M   3 | | S   3 | | | Hertz CA BiWk | | |

## EARNINGS SUMMARY

| DESCRIPTION | RATE | HOURS | AMOUNT | YEAR TO DATE | DESCRIPTION | AMOUNT | YEAR TO DATE |
|---|---|---|---|---|---|---|---|
| Vacation On Term | 24.0770 | 80.00 | 1,926.16 | 4,044.94 | TAXES | | |
| Salary Biweekly | | .00 | .00 | 23,691.77 | FIT | 103.60 | 1,286.43 |
| RAC Fld Bonus | | .00 | .00 | 1,029.17 | SS | 119.42 | 1,692.50 |
| TOTAL EARNINGS | | | 1,926.16 | 28,765.88 | MEDICARE | 27.93 | 395.83 |
| TOTAL HOURS WORKED | | .00 | | | California SIT | 54.28 | 653.54 |
| | | | | | California SDI | 19.26 | 272.98 |
| PRE-TAX DEDUCTIONS | | | | | TOTAL TAXES | 324.49 | 4,301.28 |
| Dental Plan | | | .00 | 74.75 | | | |
| Medical Plan Deduct | | | .00 | 1,370.69 | OTHER DEDUCTIONS | | |
| Vision Plan | | | .00 | 21.99 | Fed Tax Levy | .00 | 684.03 |
| TOTAL PRE-TAX | | | .00 | 1,467.43 | TOTAL OTHER DEDNS | .00 | 684.03 |

**Hertz.**

The Hertz Corporation
8501 Williams Rd.
Estero, FL 33928

For questions contact
AskHR at
1-800-654-3373

| SUMMARY: | CURRENT | YEAR TO DATE |
|---|---|---|
| GROSS PAY | 1,926.16 | 28,765.88 |
| PRE-TAX DEDUCTIONS | .00 | 1,467.43 |
| TAX DEDUCTIONS | 324.49 | 4,301.28 |
| OTHER DEDUCTIONS | .00 | 684.03 |
| **NET PAY** | **1,601.67** | **22,313.14** |

Current = : YTD =

↓ ──── REMOVE DOCUMENT ALONG THIS PERFORATION ──── ↓

| EMPLOYEE NAME | | | EMPLOYEE NUMBER | | CHECK SEQUENCE | | CHECK NUMBER |
|---|---|---|---|---|---|---|---|
| Mark J Graham | | | 216625 | | 01260 | | 0009057048 |
| PERIOD START | PERIOD END | | PAYMENT DATE | ORGANIZATION | | | |
| 10-JUN-2019 | 23-JUN-2019 | | 14-JUN-2019 | RAC.WEST.N PAC.Fresno. | | | |
| FEDERAL FILING INFORMATION | | STATE FILING INFORMATION | | PAYROLL | | | |
| M        3 | | S        3 | | Hertz CA BiWk | | | |

## EARNINGS SUMMARY

| DESCRIPTION | RATE | HOURS | AMOUNT | YEAR TO DATE | DESCRIPTION | AMOUNT | YEAR TO DATE |
|---|---|---|---|---|---|---|---|
| Vacation On Term | 24.0770 | 80.00 | 1,926.16 | 2,118.78 | TAXES | | |
| Salary Biweekly | | .00 | .00 | 23,691.77 | FIT | 103.60 | 1,182.83 |
| RAC Fld Bonus | | .00 | .00 | 1,029.17 | SS | 119.42 | 1,573.08 |
| TOTAL EARNINGS | | | 1,926.16 | 26,839.72 | MEDICARE | 27.93 | 367.90 |
| TOTAL HOURS WORKED | | .00 | | | California SIT | 54.28 | 599.26 |
| | | | | | California SDI | 19.26 | 253.72 |
| PRE-TAX DEDUCTIONS | | | | | TOTAL TAXES | 324.49 | 3,976.79 |
| Dental Plan | | | .00 | 74.75 | | | |
| Medical Plan Deduct | | | .00 | 1,370.69 | OTHER DEDUCTIONS | | |
| Vision Plan | | | .00 | 21.99 | Fed Tax Levy | .00 | 684.03 |
| TOTAL PRE-TAX | | | .00 | 1,467.43 | TOTAL OTHER DEDNS | .00 | 684.03 |

**Hertz**

The Hertz Corporation
8501 Williams Rd.
Estero, FL 33928

For questions contact
AskHR at
1-800-654-3373

| SUMMARY: | CURRENT | YEAR TO DATE |
|---|---|---|
| GROSS PAY | 1,926.16 | 26,839.72 |
| PRE-TAX DEDUCTIONS | .00 | 1,467.43 |
| TAX DEDUCTIONS | 324.49 | 3,976.79 |
| OTHER DEDUCTIONS | .00 | 684.03 |
| **NET PAY** | **1,601.67** | **20,711.47** |

Current =   : YTD =

⌄ —— REMOVE DOCUMENT ALONG THIS PERFORATION —— ⌄

| EMPLOYEE NAME | | | EMPLOYEE NUMBER | | CHECK SEQUENCE | | | CHECK NUMBER |
|---|---|---|---|---|---|---|---|---|
| Mark J Graham | | | 216625 | | 01260 | | | 0009057047 |

| PERIOD START | PERIOD END | | PAYMENT DATE | | ORGANIZATION | | | |
|---|---|---|---|---|---|---|---|---|
| 10-JUN-2019 | 23-JUN-2019 | | 14-JUN-2019 | | RAC.WEST.N PAC.Fresno. | | | |

| FEDERAL FILING INFORMATION | | STATE FILING INFORMATION | | PAYROLL | | | | |
|---|---|---|---|---|---|---|---|---|
| M | 3 | S | 3 | Hertz CA BiWk | | | | |

### EARNINGS SUMMARY

| DESCRIPTION | RATE | HOURS | AMOUNT | YEAR TO DATE | DESCRIPTION | AMOUNT | YEAR TO DATE |
|---|---|---|---|---|---|---|---|
| Salary Biweekly | | 24.00 | 577.85 | 23,691.77 | TAXES | | |
| Vacation On Term | 24.0775 | 8.00 | 192.62 | 192.62 | FIT | .00 | 1,079.23 |
| RAC Fld Bonus | | .00 | .00 | 1,029.17 | SS | 46.17 | 1,453.66 |
| TOTAL EARNINGS | | | 770.47 | 24,913.56 | MEDICARE | 10.80 | 339.97 |
| TOTAL HOURS WORKED | | 24.00 | | | California SIT | .00 | 544.98 |
| | | | | | California SDI | 7.45 | 234.46 |
| PRE-TAX DEDUCTIONS | | | | | TOTAL TAXES | 64.42 | 3,652.30 |
| Dental Plan | | | 1.31 | 74.75 | | | |
| Medical Plan Deduct | | | 24.05 | 1,370.69 | OTHER DEDUCTIONS | | |
| Vision Plan | | | .39 | 21.99 | Fed Tax Levy | .00 | 684.03 |
| TOTAL PRE-TAX | | | 25.75 | 1,467.43 | TOTAL OTHER DEDNS | .00 | 684.03 |

**Hertz**

The Hertz Corporation
501 Williams Rd.
Estero, FL 33928

For questions contact
AskHR at
1-800-654-3373

| SUMMARY: | CURRENT | YEAR TO DATE |
|---|---|---|
| GROSS PAY | 770.47 | 24,913.56 |
| PRE-TAX DEDUCTIONS | 25.75 | 1,467.43 |
| TAX DEDUCTIONS | 64.42 | 3,652.30 |
| OTHER DEDUCTIONS | .00 | 684.03 |
| **NET PAY** | **680.30** | **19,109.80** |

Current =   : YTD =

— REMOVE DOCUMENT ALONG THIS PERFORATION —